**Aldo D. MIRARCHI and Robert L. Keith, Jr., Petitioners**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2002.
Decided Dec. 3, 2002.

---

Michael J. Wilson, Camp Hill, for petitioners.

Jonathan W. Kunkel, Camp Hill, for respondent.

Before: SIMPSON, Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

Opinion by Judge SIMPSON.

Aldo Mirarchi and Robert L. Keith (Petitioners) petition for review of the final order of the Secretary of the Department of Corrections (Department) which adopted the findings of fact and conclusions of law of the hearing examiner, thereby denying their request for reimbursement of annual leave deducted from their employee leave accounts while they were receiving benefits under Act 632.[1] We affirm the decision of the Department.

Petitioners were employed by the Department in state correctional institutions (SCI). In 1989, Petitioner Keith was involved in several riots which occurred at SCI–Camp Hill. He was injured by an inmate and received Act 632 benefits until 1997, when he retired from the Department after approximately 20 years of service.

Petitioner Mirarchi is a current employee of the Department and has received Act 632 benefits since August 1995, when he was involved in a riot at SCI–Coal Township. He was taken hostage by inmates and was injured during the incident. Petitioner Mirarchi remains disabled.

In addition to receiving their full salaries as provided by Section 1 of Act 632, Petitioners continued to accrue annual leave in accordance with Section 2 of Act 632.[2] This section provides that "[n]o absence from duty of any State employe to whom this act applies by reason of any such injury shall in any manner be deducted from any period of leave allowed the employe by law or by regulation."

At some point, Petitioners became aware that the Department began deducting annual leave in excess of the maximum from their accounts. In April 1999, counsel for Petitioners sent the Department a letter requesting a determination or, in the alternative, a hearing, concerning the deductions and the potential reimbursement of this leave. Ultimately, the Department scheduled an administrative hearing.[3]

At the hearing, Kenneth Strohm, Chief of the Department's Manpower Management and Personnel Services Section of the Bureau of Human Resources, appeared for the Department. He explained that Petitioners' request was denied pursuant to the Office of Administration (OA) Personnel Rules, Management Directive 505.7

---

1. Act of December 8, 1959, P.L. 1718, *as amended,* 61 P.S. §§ 951–952. Section 1 of Act 632 specifically provides that "[a]ny employe of a State penal or correctional institution ... who is injured during the course of his employment by an act of any inmate or any person confined in such institution ... shall be paid ... his full salary, until the disability arising therefrom no longer prevents his return as an employe ... at a salary equal to that earned by him at the time of his injury." 61 P.S. § 951.

2. 61 P.S. § 952.

3. The Secretary issued a May 1999 letter denying Petitioners' request to reimburse their leave accounts. Petitioners filed a petition for review, raising the same issues. This Court issued a memorandum opinion and order determining that the matter was not ripe for appellate review because the letter did not constitute a valid adjudication within the meaning of Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504. We vacated the Department's decision and remanded the matter with the direction that the Department conduct an administrative hearing on the question of the deduction of annual leave from Petitioners' accounts.

which forbids Commonwealth employees from accumulating annual leave in excess of 45 days from one calendar year to the next.[4]

Strohm stated that there are three exceptions to Management Directive 505.7, only one of which was applicable to this case. The exception applies to Act 632 benefit recipients and permits the recipients to carryover leave in excess of 45 days to the next calendar year, but only for a total of seven pay periods. If the recipient does not return to work during that period, excess leave is removed from the recipient's account at the end of the seventh pay period.

Sherri Keiter–Reed, Chief of the Social Insurance Section of the Employees Benefits Division for the Governor's OA, also testified on behalf of the Department. Keiter–Reed is responsible for administering the leave program for all Commonwealth employees as well as drafting, disseminating and ensuring proper implementation of any new policy or management directive. She testified that both Management Directive 505.7 and the Leave and Holiday Programs Manual were issued pursuant to the Management Directive system. Keiter–Reed opined

that Petitioners' excess leave was properly deducted according to Management Directive 505.7 and the Leave and Holiday Programs Manual.[5]

The hearing examiner issued an opinion recommending that the Department deny the reimbursement petition. He concluded that Management Directive 505.7 and the Leave and Holiday Programs Manual limit the accumulation of unused annual leave to a maximum of 45 days, with a limited exception for recipients of Act 632 benefits. The hearing examiner also concluded that injured Department employees receiving benefits under Act 632 are not entitled to accumulate more annual leave than other Commonwealth employees. He noted that all Commonwealth employees are treated similarly with regard to removal of excess annual leave accumulation and such removal often occurs for these employees.[6]

■ The Secretary issued an order adopting the opinion of the hearing examiner. Petitioners thereafter sought review with this Court.[7]

■ Petitioners assert that because they are entitled to full salary benefits

4. Chapter 8, Subchapter B of Management Directive 505.7 concerns leave with pay. Specifically, Section 8.16(c) provides that "[u]nused annual leave shall be carried over from one calendar year to the next. The amount carried over may not exceed 45 days–337.5 hours for a 37.5–hour week or 360 hours for a 40–hour week." R.R. at 429a.

5. The Leave and Holiday Programs Manual, M530.7 Amended, relating to carryover of leave, provides that "[u]nused annual, combined, or sick leave shall be carried over to the next leave calendar year provided that such leave does not exceed the maximum carryover amount...." The Manual provides that a leave calendar year extension of seven pay periods may be granted when annual leave would be lost due to the maximum

carryover amounts when an employee was on Act 632/534 leave which precluded the use of earned leave.

6. The hearing examiner found as fact that 13,074 employees lost excess annual leave in the 1999 calendar year. Finding of Fact No. 51, Hearing Examiner's recommended opinion dated May 8, 2001, adopted by the Secretary of the Department, July 5, 2001.

7. Our scope of review of a final order of an administrative agency is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. *Mihok v. Dep't of Public Welfare*, 670 A.2d 227 (Pa. Cmwlth.1996).

pursuant to Act 632, they are entitled to continue to accrue annual leave while disabled. They argue Act 632 guarantees a qualified employee will not forfeit that leave time which would have been available to the employee had he or she not been disabled. Petitioners believe it is unfair to prohibit limitless leave accrual because they are disabled and unable to use the leave. They rely on *Lightcap v. Dep't of Public Welfare*, 107 Pa.Cmwlth. 98, 527 A.2d 1087 (1987).

■ Contrary to Petitioners' assertions, Act 632 does not entitle beneficiaries to treatment preferable to all other Commonwealth employees. Act 632 was designed to assure those who undertake employment in certain state institutions, such as state hospitals or correctional institutions, would be fully compensated in the event they were disabled by a patient or inmate. *Lightcap*, 527 A.2d at 1089. The benefits were intended to supplement benefits authorized under the Workers' Compensation Act.[8] The benefits, however, are not without limitation. *Id.* Specifically, Section 2 of Act 632 limits benefits to those "allowed the employee by law or by regulation." Therefore, Act 632 does not permit injured employees who receive Act 632 benefits to accumulate annual leave in excess of mandatory maximums established by Commonwealth laws or regulations.

■ Management directives announcing detailed policies, responsibilities and procedures that are relatively permanent in nature and which have been signed by the head of any commission under the Governor's jurisdiction have the force of law when they are based upon authority or duty conferred by constitution, statute or regulation. *Cambria County Mental Health/Mental Retardation v. State Civil Service Comm'n*, 756 A.2d 103 (Pa. Cmwlth.2000). Because management directives have the force of law, the express limitation contained in Section 2 of Act 632 includes management directives. Accordingly, Petitioners' leave accumulations are subject to Management Directive 505.7 limits prohibiting carryover of leave in excess of 45 days.

■ Although Management Directive 505.7 and the Leave and Holiday Programs Manual limit a Commonwealth employee's carryover of accrued annual leave to 45 days, the directive has an exception which takes into consideration the unique and unfortunate status of the employee disabled by reason of the act of an inmate. The exception provides that Act 632 benefit recipients may carryover leave in excess of 45 days for seven pay periods into the next calendar year. We find no error in the Department's refusal to continue the carryover indefinitely. It is the explicit provision that should the Act 632 benefit recipient not return to work within seven pay periods of the next calendar year he may not continue to carry over the excess leave.[9]

Further, Petitioners' reliance on *Lightcap* is misplaced. In that case, Lightcap was employed in a facility operated by the Department of Public Welfare

---

8. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

9. An agency is entitled to great deference in the interpretation of its own regulations. *Giant Food Stores v. Dep't of Health*, 808 A.2d 299 (Pa.Cmwlth.2002) (No. 913 C.D. 2001). The fact that the reviewing court may have a different opinion is not sufficient to interfere

with the agency's action, and judicial discretion may not be substituted for administrative discretion. *Gwynedd Dev. Group, Inc. v. Dep't of Labor and Industry, Bureau of Labor Standards*, 666 A.2d 365, 370 (Pa.Cmwlth.1995), *appeal granted in part*, 544 Pa. 218, 675 A.2d 1220 (1996).

(DPW). She sustained an injury and received benefits pursuant to a similar statutory provision. Lightcap appealed DPW's calculation of benefits, including leave time accrual. We held the statute

> guarantees that a qualified employee will not forfeit that leave time which would have been available to her had she not been absent from work because of an ... injury. In the case at bar, if Lightcap had not been injured, she would have been able to accumulate 45 days of annual leave....

*Lightcap*, 527 A.2d at 1090. Contrary to Petitioners' contention, we did not hold that a qualified employee was entitled to accumulation beyond 45 days.

Because of the recent tragic events affecting our nation, we are acutely aware of the sacrifices of those who have chosen to protect the public. We are constrained, however, to interpret the law as written. Accordingly, we cannot grant relief.[10]

### ORDER

AND NOW, this 3rd day of December, 2002, the decision of the Department of Corrections is affirmed.

---

10. Because we have determined that Petitioners are not entitled to accumulate leave in excess of 45 days, we need not address their second issue of whether the Department should reimburse their leave accounts for the number of annual leave hours deducted or pay Petitioners the monetary value for the annual leave deducted.